# In the United States Court of Federal Claims
No. 13-218C
(Filed: January 9, 2015)

|  |  |
|---|---|
| CHRISTOPHER G. VELLANTI, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Motion to Dismiss; RCFC 12(b)(6); Military Pay Act; 37 U.S.C. § 204; 10 U.S.C. § 12686; AFI 36-2619; AFI 36-2131; Involuntary Retirement |

*Raymond Jewell Toney*, Emeryville, CA, for plaintiff.

*Michael D. Snyder*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With him on the briefs were *Scott D. Austin*, *Jeanne E. Davidson*, *Robert E. Kirschman, Jr.*, *Stuart F. Delery*, *Joyce R. Branda*, and *Todi Carnes*, Of Counsel.

**OPINION AND ORDER**

      This military pay case is before the Court on the government's motion to dismiss pursuant to Rules of the Court of Federal Claims ("RCFC") 12(b)(6) and the parties' cross motions for judgment on the administrative record ("AR"). The plaintiff, Major Christopher G. Vellanti, is a retired member of the Air Force Reserve. Compl. ¶ 3. Major Vellanti alleges that he was unlawfully denied his right to "sanctuary" protection under 10 U.S.C. § 12686(a), which would have allowed him to continue his active duty service until reaching twenty years of such service, making him immediately eligible to collect retirement benefits. Id. at ¶¶ 17, 25-29. He further alleges that the decision of the Air Force Board for the Correction of Military Records ("AFBCMR" or "the board") refusing to correct his record to reflect twenty years of active duty service was arbitrary, capricious, and contrary to law. Compl. ¶ 30. Major Vellanti seeks various forms of relief, including, among other things, a declaration that the waiver of sanctuary that he executed in accordance with 10 U.S.C. § 12686(b) was null and void, as well as back pay, allowances, and benefits to which he claims entitlement from the date of his involuntary retirement until the date he would have received twenty years of active service. Compl. 4-5.

      The government, as noted, has moved to dismiss Major Vellanti's complaint for failure to state a claim upon which relief can be granted. It argues that dismissal is warranted because Major Vellanti was not on active duty status at the time of his retirement, so that his claim does not fall within the scope of the Military Pay Act, 37 U.S.C. § 204(a)(1). Def.'s Mot. 1, 10-14,

ECF No. 9.  In the alternative, the government contends that the AFBCMR's decision was correct, and that the Court should enter judgment on the administrative record in its favor.  Id. at 14-16.

Major Vellanti has also moved for judgment on the administrative record.  He contends that the decision of the AFBCMR finding that his waiver of sanctuary was effective was arbitrary, capricious and contrary to law.  Pl.'s Mot. 1.

For the reasons set forth below, the Court finds that the government's motion to dismiss lacks merit, but that the decision of the AFBCMR was not arbitrary and capricious or contrary to law.  Accordingly, the government's motion to dismiss is **DENIED**, its motion for judgment on the administrative record is **GRANTED**, and Major Vellanti's cross motion is **DENIED**.[1]

## BACKGROUND

### I. Statutory and Regulatory Framework

This case concerns the interpretation and application of Air Force instructions implementing 10 U.S.C. §§ 12686(a) and (b).  Originally enacted in 1956, section 12686(a) affords a reserve member serving on active duty who accrues eighteen years of active-duty service a right of "sanctuary" which entitles him to have his active-duty tour extended to allow him to complete twenty years of such service and qualify for immediate retirement.  See Wilson v. United States, 917 F.2d 529, 532 (Fed. Cir. 1990).[2]  It provides that:

> Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system (other than the retirement system under chapter 1223 of this title), may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary.

10 U.S.C. § 12686(a).

In 1996, Congress amended the law to allow the military services to require a waiver of sanctuary in cases where a reservist was called to active duty for a period of less than 180 days.  The waiver provision is codified at 10 U.S.C. § 12686(b).  It provides that:

---

[1] Neither party has requested oral argument in this case, and the Court has concluded that such argument is unnecessary.

[2] As the court of appeals noted in Wilson, the purpose of the sanctuary provision was "to provide some degree of economic security as an inducement to reservists to stay on active duty, thus reducing unwanted attrition and its attendant costs to the Government."  917 F.2d at 532.

2

> With respect to a member of a reserve component who is to be ordered to active duty (other than for training) under section 12301 of this title pursuant to an order to active duty that specifies a period of less than 180 days and who (but for this subsection) would be covered by subsection (a), the Secretary concerned may require, as a condition of such order to active duty, that the member waive the applicability of subsection (a) to the member for the period of active duty covered by that order.  In carrying out this subsection, the Secretary concerned may require that a waiver under the preceding sentence be executed before the period of active duty begins.

10 U.S.C. § 12686(b).

There are two Air Force instructions implementing 10 U.S.C. § 12686.  The first is Air Force Instruction 36-2619, Military Personnel Appropriation (MPA) Man-Day Program (22 July 1994) (superseded 27 July 2014) [hereinafter AFI 36-2619].  Paragraph 5.2 of AFI 36-2619 states that "[i]ndividuals will not be placed on an MPA man-day tour [i.e. an active-duty tour funded by Military Personnel Appropriations] if during that tour the member will have between 18 and 20 years of active service towards a regular retirement (active duty retirement)." AFI 36-2619, ¶ 5.2.[3]

The other relevant instruction is Air Force Instruction 36-2131, Administration of Sanctuary in the Air Reserve Components, (17 January 2003) (superseded 27 July 2011) [hereinafter AFI 36-2131].  Chapter 3 of AFI 36-2131 (entitled "Waiver Process for AD Sanctuary") implemented the 1996 amendment that added subsection (b) to 10 U.S.C. § 12686.  In particular, paragraph 3.1 provides that before orders will be issued for voluntary active-duty tours of less than 180 days, "[t]he Secretary of the Air Force requires members who are in, and members whose upcoming tour would qualify them for sanctuary protections, to affirmatively waive the applicability of 10 U.S.C. § 12686(a)."  AFI 36-2131, ¶ 3.1.  Attachments to AFI 36-2131 include forms that reservists must use to waive or invoke their rights to sanctuary.

Paragraph 1.5 of AFI 36-2131 specifically addresses MPA man-day tours and cross references AFI 36-2619.  It notes that "AFI 36-2619, <u>Military Personnel Appropriation (MPA) Man-Day Program</u>, defines MPA tours" and mandates that "[i]f an ARC [Air Reserve Component] member performs an MPA tour and the period of AD [active duty] would result in the member qualifying for AD sanctuary, the member <u>will not</u> begin the tour without an approved waiver prior to the tour start date." AFI 36-2131, ¶ 1.5 (emphasis in original).

---

[3] Active-duty tours funded by Military Personnel Appropriations are performed in support of the regular, active-duty component. In contrast, active-duty tours funded by Reserve Personnel Appropriations are performed in support of reserve component programs.

## II. Facts

### A. Major Vellanti's Last Active Duty Tour and Request for Sanctuary

Major Vellanti is a former Air Force reserve major who was transferred to the Retired Reserve, as required by law, after he was twice non-selected for promotion to lieutenant colonel. See 10 U.S.C. §§ 14506, 14513, 14701(a)(3); AR 4, 12; Compl. ¶¶ 11, 20. His effective date of retirement was May 31, 2010. AR 4; Compl. ¶ 6. At the time of his transfer to the Retired Reserve, Major Vellanti had accrued over eighteen years of active-duty service. Compl. ¶ 12; AR 162 (block 12c and 12d). Major Vellanti is eligible to begin collecting retirement pay at age 60. Compl. ¶ 6.

Major Vellanti's last active-duty tour took place within the period beginning on October 16, 2006 and ending on March 28, 2007. AR 162 (block 12), 165. Prior to beginning that tour, consistent with 10 U.S.C. § 12686(b) and AFI 36-2131 ¶¶ 1.5 and 3.1, Major Vellanti signed and submitted a sanctuary rights waiver for any active duty time he might serve during the 179-day period of October 2, 2006 to March 29, 2007. AR 165; Compl. ¶ 15.

Notwithstanding the waiver, after accruing 18 years of active-duty service during the tour, Major Vellanti filed a statement invoking his right to sanctuary protection, which the Air Force received on March 20, 2007, nine days prior to the tour's scheduled end date. AR 165, 167; Compl. ¶¶ 17, 24. The Air Force denied Major Vellanti's sanctuary request, citing the requirements of AFI 36-2131, ¶ 1.5 and the fact that he had executed and submitted a sanctuary waiver encompassing the period of his current tour of duty. AR 165; Compl. ¶ 18. Thus, Major Vellanti's active-duty tour concluded on the date originally scheduled: March 28, 2007. AR 162 (block 12), 165.

### B. Major Vellanti's Involuntary Retirement

In August 2007, Major Vellanti was notified that he had not been selected for promotion to lieutenant colonel for a second time (he was first passed over in June 2006, a second time in June 2007, and again in 2009 by a special selection board convened to reconsider his 2006 application in lieu of the first promotion board). AR 29; 33-36. By law, reserve officers in the grade of major who are not selected for promotion twice are required to be inactivated, generally through retirement or discharge, unless specifically selected for continued service. See 10 U.S.C. §§ 14506, 14513, 14701(a)(1). As a result, Major Vellanti was offered continued service, which would allow him to serve in the Reserve until May 31, 2010, and to continue to meet promotion boards for potential advancements in grade. See AR 171-72; 10 U.S.C. § 14701(a)(3). Major Vellanti accepted the terms of continued service, AR 172.

During his continued service, Major Vellanti applied multiple times to serve on active-duty tours (in an effort to acquire sufficient active duty time to qualify for an active-duty retirement). See AR 174-75 (June 2008), 176-77 (March 2009). Each time, as required by Air Force regulations, he executed sanctuary waivers for the active duty tours that he sought. Id.

4

Major Vellanti was not successful in procuring another active-duty tour. Compl. ¶ 19. In addition, he was not selected for promotion during the period of his selective continuation. Accordingly, on May 31, 2010, Major Vellanti was mandatorily transferred to the Retired Reserve upon the conclusion of his continuation period. Compl. ¶¶ 6, 20. See 10 U.S.C. §§ 14506, 14513, and 14701(a)(3).

### C. AFBCMR Decision

Six months after his retirement, Major Vellanti, acting through counsel, filed an application with the AFBCMR, alleging error in the first two promotion boards (June 2006 and 2007) that did not select him for promotion. AR 12. He also alleged that the decisions of the first two promotion boards prejudiced his chance for promotion by the third promotion board (June 2009), which he conceded was otherwise error-free. See AR 20. Thus, Major Vellanti requested that he be reconsidered by a promotion board and promoted to lieutenant colonel; that he receive back pay and allowances for such promotion; and that his records be corrected to show that he was not retired on May 31, 2010. AR 14.

By letter dated February 4, 2011, the board forwarded to Major Vellanti an advisory opinion prepared by the Air Force Selection Board Secretariat. See AR 146-49, 152. The Secretariat found that an administrative error occurred in the context of the June 2006 promotion board, and that the promotion board should therefore revisit its decision to correct the error. Id. The Secretariat found no error, however, with the subsequent promotion boards, all of which had decided not to promote Major Vellanti. Id.

In response to the February 4, 2011 letter, Major Vellanti's attorney sent the board a legal memorandum, dated July 28, 2011, asserting a new claim—that the Air Force had violated AFI 36-2619 when it placed him on an MPA man-day tour that took him beyond eighteen years of active duty service. AR 153-60. As noted above, that Instruction prohibits placing a reservist on MPA orders when the reservist would accrue at least eighteen years of service toward an active-duty retirement while on such orders. AFI 36-2619 ¶ 5.2; see also AR 158. Major Vellanti's counsel argued that Major Vellanti and the Air Force had made a "mutual mistake" by placing him on active duty MPA man-day orders from October 2006 to March 2007, a period during which Major Vellanti accrued eighteen years of active-duty service. AR 158. He argued that, "[b]ut for this error," Major Vellanti would have reached twenty years of active duty service and secured a regular retirement. AR 153.

Major Vellanti further asserted that placing him on active duty MPA orders (1) resulted in the creation of an Unfavorable Information File (UIF) for him based on conduct that "otherwise would not have happened," depriving him of active duty service opportunities; and (2) precluded him from remaining competitive for other, longer active duty tours through programs offering tours other than the MPA man-day tour. AR 158-59. Major Vellanti also conceded that "no officer, reserve or active, is entitled to a regular retirement" and said that he "understands and has acknowledged his errors, which led to the creation of the UIF." AR 159. He did not address the Secretariat's advisory opinion regarding the several promotion boards that did not select him for promotion. See AR 153-60.

5

Ultimately, the board found that Major Vellanti had presented insufficient evidence to demonstrate error or injustice with respect to his requests for supplemental promotion consideration.  AR 6.  In addition, the board rejected Major Vellanti's arguments that the Air Force violated the statutory sanctuary provisions or its own instructions when it rejected his invocation of a right to sanctuary at the conclusion of his last active duty tour.  AR 7 (observing that there was no evidence that Major Vellanti's waiver of sanctuary was ineffective or that "his service under that waiver was somehow performed in contravention of applicable policies or procedures").

### D.  The Present Complaint

On March 28, 2013, Major Vellanti filed a complaint in this Court.  Major Vellanti alleges that the Air Force unlawfully placed him on MPA man-day orders in contravention of the terms of AFI 36-2619, ¶ 5.2.  See Compl. ¶¶ 22-23, 25.  Major Vellanti further argues that because the order placing him on active duty was unlawful, so too was the waiver of sanctuary he executed.  Therefore, he contends, he was unlawfully denied his statutory entitlement to sanctuary, which would have kept him on active duty up until he completed twenty years of active duty service and became eligible for immediate retirement.

## DISCUSSION

### I.  Jurisdiction

The Tucker Act empowers this court to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2012).  While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights on a plaintiff.  United States v. Testan, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Under the Military Pay Act, 37 U.S.C. § 204, "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service."  The Act "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service."  Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (quoting Sanders v. United States, 594 F.2d 804, 810 (Ct. Cl. 1979) (en banc)).  Accordingly, the Military Pay Act "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay."  Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)).

In this case, Major Vellanti alleges that his release from active duty following the completion of his tour between October 2, 2006 and March 29, 2007, violated 10 U.S.C. § 12686(a), which affords a reserve member serving on active duty who accrues eighteen years of active-duty service the right to have his active-duty tour extended to allow him to complete twenty years of such service.  Compl. ¶ 26-28.  Major Vellanti argues that had he remained on active duty, he would have been entitled to receive active duty pay, and would have qualified for a regular retirement (including the immediate right to retirement benefits) at the conclusion of his tour.  Compl. ¶ 29.  Accordingly, this Court has Tucker Act jurisdiction over Major Vellanti's claim for backpay and other monetary relief pursuant to the Military Pay Act.

**II. Defendant's Motion to Dismiss for Failure to State a Claim**

In ruling on a RCFC 12(b)(6) motion to dismiss, the court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  While the court must draw all reasonable inferences in favor of the non-moving party, Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp.  v. Twombly, 550 U.S. 544, 555 (2007).  In other words, plaintiff's claim must be plausible on its face.  Id. at 570; Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

In this case, the government contends that Major Vellanti has failed to state a claim under the Military Pay Act, because that Act "applies to reserve officers, such as Major Vellanti, only when they are removed while on active duty."  Def.'s Mot. 11 (citing Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999)).  As the government points out, Major Vellanti was not on active duty when he was retired.  Id.  Further, the government argues, Major Vellanti's claim fails because he has not plausibly alleged that his release from active duty and retirement were involuntary, as is required for a reservist to "fit within the scope of, and take advantage of, the money-mandating status of § 204."  Id. (quoting Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006)).

The Court finds the government's arguments meritless.  The gravamen of Major Vellanti's complaint in this case is that he was entitled, as a matter of law, to be kept on active duty until he reached his twentieth year of such service and became eligible for a regular retirement.  Major Vellanti further asserts that the waiver of sanctuary that he filed was invalid.  It is clear that a reservist who alleges that he was unlawfully released from active duty and denied the pay and allowances to which he would have been entitled had he remained on active duty, states a claim under the Military Pay Act.  See Sargisson v. United States, 913 F.2d 918, 920 (Fed. Cir. 1990); see also Woodward v. United States, 871 F.2d 1068, 1070 (Fed. Cir. 1989).  Thus, it is of no consequence that at the time Major Vellanti retired, he was not on active duty; the whole point of his complaint is that—as a matter of law—he was wrongfully released from active duty and that he should have remained on active duty until he completed his twenty years of service.

The government's reliance upon Palmer v. United States, for a contrary position is misplaced. See Def.'s Mot. 11. In Palmer, the plaintiff was not alleging that he was illegally removed from active duty and therefore lost active duty pay. Rather, his argument was that he was illegally transferred out of his pay billet, and that, as a result, he lost the opportunity to perform drills and training duties for which he would have received pay. 168 F.3d at 1313. The court of appeals distinguished Palmer's situation from that of an individual like Major Vellanti, who claims that he was wrongfully denied continued service on active duty, noting that

> The consequence of this difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty.

168 F.3d at 1314.

The Court finds similarly unpersuasive the government's argument that Major Vellanti has not asserted that his release from active duty and his retirement were involuntary. Major Vellanti has alleged that he asserted a statutory right to sanctuary at the end of his last tour of duty, contending that the waiver he executed was invalid, and seeking to be kept on active duty until he reached twenty years of active duty. The Air Force, however, denied his assertion of that right. Consequently, his tour of duty ended on March 28, 2007 and he was unable to secure further active duty service. Thus, he has alleged that his removal from active duty was not voluntary.

In short, the government's arguments in support of its motion to dismiss are without merit. Mr. Vellanti has stated a claim for relief under the Military Pay Act. The government's motion to dismiss pursuant to RCFC 12(b)(6) is, accordingly, denied.

### III. Judgment on the Administrative Record

**A. Standard of Review**

    **1. RCFC 52.1**

RCFC 52.1 governs motions for judgment on the administrative record. See RCFC 52.1(c). Therefore, the standard of review for a motion for judgment on the administrative record differs from that for a motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1354-55 (Fed. Cir. 2005). Unlike summary judgment, for instance, "a genuine dispute of material fact does not preclude a judgment on the administrative record." Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 751 (2012) (citing Bannum, Inc., 404 F.3d at 1355-56). To the contrary, "[t]o review a motion or cross-motions under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 630 (2014) (citing Bannum, Inc., 404 F.3d at 1356-57); see also RCFC 52.1 Rules Committee Note (2006) ("Summary judgment standards are not pertinent to judicial review upon

an administrative record."). "The existence of a question of fact thus neither precludes the granting of a motion for judgment on the administrative record nor requires this court to conduct a full blown evidentiary proceeding." CRAssocs., Inc. v. United States, 102 Fed. Cl. 698, 710 (2011) (citing, inter alia, Bannum, Inc., 404 F.3d at 1356).

### 2. Scope of Review of AFBCMR Decisions

The scope of judicial review of military correction board decisions is a deferential one and is "limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). The court reviews correction board decisions "for failure to correct plain legal error committed by the military." Dodson v. U.S. Gov't, Dep't of Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing Arens v. United States, 969 F.2d 1034, 1037 (Fed. Cir. 1992)); Grieg v. United States, 640 F.2d 1261, 1266 (Ct. Cl. 1981); Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979). "Such legal error includes the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" Dodson, 988 F.2d at 1204 (quoting Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979)).

Similarly, the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

### B. Merits

In this case, Major Vellanti challenges the correction board's conclusion that there was no evidence that Major Vellanti's waiver of sanctuary was ineffective or that applicable policies and procedures were violated by his service pursuant to that waiver. First, he contends that the board's decision is arbitrary and capricious because it did not specifically discuss AFI 36-2619, the regulation upon which he relied in arguing that his waiver of sanctuary was invalid. Second, he argues, should the Court reach the issue, it should rule that it was unlawful under ¶ 5.2 of AFI 36-2619 for the Air Force to allow him to serve a voluntary MPA man-day tour during which he accrued more than eighteen years of active service. Further, Major Vellanti contends, because the Air Force could not lawfully order him to active duty on MPA man-day orders, the waiver of sanctuary he executed was "invalid, null and void." Compl. ¶ 28. The Court finds each of these arguments without merit.

First, it is well-established that a reviewing court may "uphold an agency decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) ("State Farm")

9

(quoting Bowman Transp. Inc. v. Ark.-Best Freight Sys., 419 U.S. 281, 285 (1983)). The only requirement is that the agency decision contain "a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 436 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). In this case, the Court concludes that the path of the board's reasoning is discernible.

Thus, it is clear that the board had before it an explanation of the basis for the Air Force's denial of sanctuary, with citation to a specific regulatory provision (AFI 36-2131, ¶ 1.5). AR 165. It is also clear that the board had before it Major Vellanti's brief, in which he argued that his waiver was invalid under AFI 36-2619, ¶ 5.2. AR 158. With the issue thus joined, the board rejected Major Vellanti's reliance upon AFI 36-2619 ¶ 5.2 when it stated (1) that it did not find the legal arguments of counsel for Major Vellanti "sufficient to conclude that [he] was somehow deprived of rights to which he was entitled or that he was the victim of an error or injustice" and (2) that there was "no evidence that [the] waiver was ineffective or that his service under that waiver was somehow performed in contravention of applicable policies and procedures." AR 7.

In short, the board rejected Major Vellanti's construction of Air Force regulations, particularly his reliance on AFI 36-2619 ¶ 5.2, and it held that the waiver of sanctuary that Major Vellanti executed was valid. While the board did not provide much elaboration about its reasons for finding that policies and procedures that Major Vellanti cited were not violated, the record and the board's decision allow the Court to reasonably discern its path.

The Court further finds that the board's decision was correct. Thus, the Court is not persuaded by either Major Vellanti's argument that his active duty orders violated Air Force regulations or his contention that the waiver of sanctuary he executed was ineffective. To be sure, AFI 36-2619 (issued prior to the 1996 amendments to the sanctuary statute) states that "[i]ndividuals will not be placed on an MPA man-day tour if during that tour the member will have between 18 and 20 years of active service towards a regular retirement (active duty retirement)." AFI 36-2619 ¶ 5.2. But AFI 36-2131, the instruction that specifically deals with sanctuary for reservists and which was promulgated after the 1996 amendment to the statute, clearly contemplates that MPA man-day tours may be authorized even when they will bring a reservist past eighteen years of active service if: (1) the tour is less than 180 days and (2) a waiver of sanctuary is executed. It states that "[i]f an ARC member performs an MPA tour and the period of AD would result in the member qualifying for AD sanctuary, the member will not begin the tour without an approved waiver prior to the tour start date." AFI 36-2131 ¶ 1.5 (emphasis in original).

Major Vellanti argues that there is a "tension" or even a "conflict" between AFI 36-2619 and AFI 36-2131. Pl.'s Mot. 17-18. But see id. at 21 (observing that "in this case there is no irreconcilable conflict between the two regulations"). He contends that AFI 36-2619, ¶ 5.2 should "trump" AFI 36-2131 ¶¶ 1.5 and 3.1 because it is allegedly the more "specific" regulation, dealing with the MPA man-day program, while AFI 36-2619 "merely addresses reserve sanctuary matters generally." Pl.'s Mot. at 18-19 (citing Long Island Care at Home Ltd. v. Coke, 551 U.S. 158, 170 (2007) and Carpenter v. Principi, 327 F.3d 1371, 1374 (Fed. Cir. 2003)). The Court finds the premises of this line of argument flawed.

10

First, the Court disagrees with Major Vellanti's argument that AFI 36-2619 is the more "specific" regulation. To the contrary, AFI 36-2131 is the specific Air Force instruction dealing with sanctuary and waivers of sanctuary for reservists. More to the point, AFI 36-2131 deals with sanctuary and waivers in the specific context of MPA man-day tours at ¶ 1.5.

Second, the Court finds that any "conflict" or "tension" that exists between AFI 36-2131 and AFI 36-2619 is easily reconciled. Thus, while AFI 36-2619 establishes a general policy under which service members will not be permitted to volunteer for MPA man-day tours that will bring them into sanctuary, AFI 36-2131 carves out an exception for tours of less than 180 days where the service member agrees to execute a waiver of sanctuary. This reconciliation of the regulations is particularly reasonable given that at the time of the facts of this case, the earlier instruction (AFI 36-2619) had not been updated since the 1996 amendment (providing waiver of sanctuary for tours of less than 180 days) was enacted.[4]

While the aforementioned interpretation of the instructions brings them into harmony, Major Vellanti's construction would render ¶ 1.5 of AFI 36-2619 superfluous, contrary to well-established canons of statutory or regulatory construction. Glover v. West, 185 F.3d 1328, 1332 (Fed. Cir.1999) (observing that in interpreting a statute or regulation the court should "attempt to give full effect to all words contained within that statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible"). If, as Major Vellanti contends, it is always impermissible for the Air Force to authorize an MPA man-day tour that brings the service member into sanctuary, then there is no use for a provision requiring that waivers be executed for such tours where they are less than 180 days in duration.

In any event, even assuming that Major Vellanti's interpretation of the regulations were correct, and that the tour of duty Major Vellanti served did not comport with Air Force policy, it does not follow that the waiver of sanctuary that Major Vellanti voluntarily executed, with a full understanding of its effect, was not lawful. To the contrary, pursuant to 10 U.S.C. § 12686(b), the Air Force was clearly authorized to require such a waiver for tours of duty of less than 180 days, like the one Major Vellanti served.

Indeed, despite being given a chance to file a supplemental brief on the issue, Major Vellanti has failed to provide any persuasive rationale for his argument that if the active duty orders did not comport with Air Force instructions, then the waiver of sanctuary required pursuant to 10 U.S.C. § 12686(b) was invalid. In that regard, the Court finds inapposite a pair of correction board decisions, cited by Major Vellanti, in which the AFBCMR found invalid waivers of sanctuary that were executed in connection with tours of duty that exceeded 180 days. See Pl.'s Supplemental Br. 3-4 (citing Case No. BC-2012-02765 (Ex. 1))); see also id. at 4-5 (citing BC-2011-05004 (Pl.'s Mot. App. at 128-135)). In those cases, unlike this one, the terms of the waivers did not comport with the statute.

---

[4] The current version of AFI 36-2619 ¶ 6.3.2 (18 July 2014) states that "[i]n general, Air Force policy does not permit ARC members to inadvertently slip into active duty sanctuary; . . . . If an ARC member performs an MPA tour of less than 180 days, and the period of AD would result in the member qualifying for AD sanctuary, the member may not begin the tour without an approved waiver in place prior to the tour start date."

There is similarly no merit to Major Vellanti's further argument that if his active duty orders were improper, then the waiver of sanctuary he executed was essentially a "blanket waiver" which is not authorized by the statute or Air Force regulations. See AFI 36-2131 ¶ 3.1 (providing that a waiver is required for each tour of duty). Major Vellanti did not sign a "blanket" waiver. The waiver he signed pertained only to the period of active duty of less than 180 days that he served and was thus consistent with both the statute and the regulations. See AR 174-77.

In short, the board decision rejecting Major Vellanti's challenge to his waiver of sanctuary was neither arbitrary and capricious nor contrary to law. Accordingly, the government's motion for judgment on the administrative record is granted and Major Vellanti's cross motion is denied.

## CONCLUSION

On the basis of the foregoing, the government's motion to dismiss is **DENIED**, the government's motion for judgment on the administrative record is **GRANTED**, and the plaintiff's motion for judgment on the administrative record is **DENIED**. The Clerk of the Court is directed to enter judgment accordingly. The parties shall bear their own costs.

**IT IS SO ORDERED.**

                                                s/ Elaine D. Kaplan
                                                ELAINE D. KAPLAN
                                                Judge